JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Diana Meighan, Administratrix of the Estae of Michael Bockius

**(b)** County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

L. Kenneth Chotiner, LL.M.
1315 Walnut St., Ste. 500, Phila. PA 19107

## DEFENDANTS

The City of Philadelphia

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983

Brief description of cause:
Due Process/ 14th Amendment Deliberate Indifference to Suicide Risk

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 300 W. Ashland Ave., Glenolden, PA 19036 _____

Address of Defendant: _____ 1515 Arch St., Phila. PA 19102 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

*RELATED CASE, IF ANY:*

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | | |
|---|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐ | No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐ | No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐ | No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/23/2022    _____    077451
                     *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

**A.    *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, L. Kenneth Chotiner, LL.M. , counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 12/23/2022    _____    077451
                     *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Diana Meighan, Administratrix of the Estate of Michael Bockius | : : | CIVIL ACTION |
| v. | : | |
| The City of Philadelphia, et al. | : : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　(X)

| | | |
|---|---|---|
| 12/23/2022 | L. Kenneth Chotiner, LL.M. | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215.564.6544 | 215.383.0370 | KCHOTINER@adlawfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

American LegalNet, Inc.
www.FormsWorkFlow.com 

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DIANA MEIGHAN,**<br>**ADMINISTRATRIX OF THE ESTATE OF**<br>**MICHAEL BOCKIUS**<br>**300 W ASHLAND AVENUE**<br>**GLENOLDEN, PA  19036**<br><div align="right">**Plaintiff**</div><br><div align="center">**Vs.**</div> | **CIVIL ACTION**<br><br><br><br><br><br>**No.: 22-CV-** |
| **CITY OF PHILADELPHIA,**<br>**1515 ARCH STREET, 15 TH FL.**<br>**PHILADELPHIA, PA. 19102**<br><br><div align="center">**And**</div><br><br>**POLICE COMMISSIONER**<br>**DANIELLE OUTLAW**<br>**3901 WHITAKER AVENUE**<br>**PHILADELPHIA, PA. 19124**<br><br><div align="center">**And**</div><br><br>**P.O. TUCKER, BADGE NO. 2471**<br>**3901 WHITAKER AVENUE**<br>**PHILADELPHIA, PA. 19124**<br><br><div align="center">**And**</div><br><br>**P.O. CREELY, BADGE NO. 4780**<br>**3901 WHITAKER AVENUE**<br>**PHILADELPHIA, PA. 19124**<br><br><div align="center">**And**</div><br><br>**P.O. MCGRODY, BADGE NO. 3445**<br>**3901 WHITAKER AVENUE**<br>**PHILADELPHIA, PA. 19124**<br><br><div align="center">**And**</div><br><br>**CPL. JOHN DOE, BADGE NO. 8139**<br>**3901 WHITAKER AVENUE**<br>**PHILADELPHIA, PA. 19124** | **JURY TRIAL DEMANDED** |

And

**P.O. GALAZKA, BADGE NO. 9337**
**3901 WHITAKER AVENUE**
**PHILADELPHIA, PA. 19124**

And

**P.O. CLARK, BADGE NO. 9909**
**3901 WHITAKER AVENUE**
**PHILADELPHIA, PA. 19124**

And

**SERGEANT/LIEUTENANT JOHN DOE 1-10**
**3901 WHITAKER AVENUE**
**PHILADELPHIA, PA. 19124**

And

**POs JOHN DOE 1-10**
**3901 WHITAKER AVENUE**
**PHILADELPHIA, PA. 19124**

**Defendants**

## COMPLAINT

Plaintiff, Diana Meighan, as the administratrix of the Estate of Michael Bockius aka Michael Meighan (hereinafter Michael Bockius), brings this action for damages pursuant to the United States Constitution as well as the statutory and common laws of the Commonwealth of Pennsylvania regarding the death by suicide of her brother, Michael Bockius, while incarcerated at the 24th District Philadelphia Police Station.

**I.    STATEMENT OF JURISDICTION AND VENUE**

1.    The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and §1343(a)(1) and (3) and supplemental jurisdiction over the state law claims pursuant to §1367(a) and the principles of pendent and ancillary jurisdiction.

2

2.      Venue is proper pursuant to 28 U.S.C. §1391(b) because the causes of action upon which the complaint is based arose at the 24th District Philadelphia Police Station, in Philadelphia Pennsylvania.

3.      Plaintiff, Diana Meighan as Administratrix of the Estate of decedent, Michael Bockius, and is entitled to bring this action under the Pennsylvania Wrongful Death Act, 42 Pa. C. S. A. § 8301.

4.      Plaintiff is entitled to bring this action on behalf of the decedent, Michael Bockius, under the Pennsylvania Survival Act, 42 Pa. C. S. A. § 8302.

## II.    PARTIES

5.      Plaintiff, Diana Meighan, individually and as administrator of the Estate of Michael Bockius ("Decedent"), is an adult individual who resides as captioned.

6.      Plaintiff is the administrator of the Estate of Michael Bockius, deceased, having been granted letter of administration on May 24, 2021, by the Register of Wills of Delaware County, Pennsylvania at file number 2321-1738. A true and correct copy of the letter of administration is attached hereto as Exhibit "A."

7.      Defendant, City of Philadelphia, ("the City") is a political subdivision of the Commonwealth of Pennsylvania with offices for service of process at 1515 Arch Street, Philadelphia, Pennsylvania.

8.      Upon information and belief, at all material times Defendant, the City, owned, operated, managed, supervised, and otherwise controlled the Philadelphia Police Department and the Philadelphia Police Districts and all the persons who worked there including all Philadelphia Police Officers and Supervisors.

9.      Upon information and belief, at all material times Defendant, Police Commissioner Danielle Outlaw, was the Philadelphia Police Commissioner and was employed by the City.

10.      Defendant, P.O. Tucker, Badge No. 2471, was at all times material hereto a member of the Philadelphia Police Department and is being sued in his individual and official capacity.

11.      Defendant, P.O. Creely, Badge No. 4970, was at all times material hereto a member of the Philadelphia Police Department and is being sued in his individual and official capacity.

12.      Defendant, P.O. McGrody, Badge No. 3445, was at all times material hereto a member of the Philadelphia Police Department and is being sued in his individual and official capacity.

13.      Defendant, Corporal John Doe, Badge No. 8139, was at all times material hereto a member of the Philadelphia Police Department and is being sued in his individual and official capacity.

14.      Defendant, P.O. Galazka, Badge No. 9337, was at all times material hereto a member of the Philadelphia Police Department and is being sued in his individual and official capacity.

15.      Defendant, P.O. Clark, Badge No. 9909, was at all times material hereto a member of the Philadelphia Police Department and is being sued in his individual and official capacity.

16.      Defendants, Sergeant/Lieutenant John Doe 1-10, were at all times material hereto currently unidentified officers and/or civilian staff medical employees of the Philadelphia Police Department and are being sued in their individual and official capacity.

4

17.     Defendants, John Doe 1-10, were at all times material hereto currently unidentified officers and/or civilian staff medical employees of the Philadelphia Police Department and are being sued in their individual and official capacity.

18.     All Defendants identified/referenced may be served at Defendant the City's office at 1515 Arch Street, Philadelphia, Pennsylvania.

19.     At all material times Defendant, the City, acted/failed to act by and through its employees, workers, servants, and other agents, all in the course and scope of their employment.

20.     Upon information and belief, at all material times Defendant Police Commissioner Outlaw was the highest ranking Police Official in the Philadelphia Police Department and was responsible for: (a) establishing, policies, practices and regulations for the conduct of all employees of the Philadelphia Police Department; (b) hiring, training, supervising, disciplining, and otherwise controlling all persons who worked in the Philadelphia Police Department  including all the individual defendants in this case; (c) controlling the operations, practices and tactility of conditions at the police districts; (d) establishing/instilling in all Police personnel a proper regard for the health and safety of all pre-trial detainees; (e) supervising, hiring, training all police personnel who are to be responsible for the safety of pre-trial detainees; (f) implementing adequate policies, procedures, practices, protocols, and other safeguards for suicide risk assessment and suicide prevention; (g) implementing adequate policies, procedures, practices, protocols, and other safeguards to protect pre-trial detainees from dangerous custodial environments, potential suicide risks and other suicide risk enhancers; (h) implementing adequate policies, procedures, practices, protocols, and other safeguards to protect prisoners charged with crimes, from suicide risk enhancers and from committing suicide.

5

21.    At all material times Defendant, the City, was responsible for implementing and/or overseeing the implementation of all policies, procedures, practices, protocols, and other safeguards for pre-trial detainee safety in Philadelphia Prisons/or holding cells.

22.    At all material times Defendant, the City, was responsible for hiring, training, supervising, disciplining, firing and/or other control of all persons employed by or otherwise working in the Philadelphia Police Department.

23.    At all material times, and regardless of who employed them, all Defendant individuals were acting under the color of state law within the course and scope of their employment, and pursuant to the customs, polices and/or practices, of Defendant, the City.

III.    **OPERATIVE FACTS**

24.    On January 5, 2021, at or around 9:25 a.m., Defendants, Police Officers Creely, McGrody, Galazka, and Clark ("Arresting Officers"), were in the area of 2800 Rosehill Street in the City and County of Philadelphia, Pennsylvania.

25.    At that date, time, and location, the Arresting Officers were in the Kensington area of Philadelphia, which is infamous for its open-air drug market and people suffering from drug addiction.

26.    In fact, the City has "maintained a decades-long strategy of containing a billion dollar drug market" in this neighborhood. *See* WHYY, *Why Philly keeps a billion-dollar open-air drug market contained in Kensington*, (Aug. 26, 2021) https://whyy.org/articles/why-the-philly-region-has-chosen-to-keep-a-billion-dollar-open-air-drug-market-contained-within-the-borders-of-my-neighborhood/ (last visited December 22, 2022).

27.    At that date time and location, the Arresting Officers arrested Decedent and another individual for a narcotics violation and reportedly seized from the Decedent five clear Ziplock packets with "stars," one packet marked "waterboy" and another marked "fly high."

28.     During this time, Decedent was under the influence of fentanyl and showing signs of intoxication and/or withdrawal due to opioid use and use disorder.

29.     The Arresting Officers transported Decedent to a Police District, where the Decedent was held.

30.     According to Philadelphia Police Department ("PPD") Directives, the Arresting Officers should have completed a "Detainee Medical Checklist."

31.     Directive 7.8, Appendix "E," "High-Risk Suicide Detainees" lists potential suicide predisposing factors that all police officers must be familiar with, including recent, excessive drug use and arrest for a non-violent crime, both of which apply to decedent. **See Exhibit "B." A true and correct copy of Appendix "E."**

32.     However, Directive 7.8, Appendix "E," "High-Risk Suicide Detainees" does <u>not</u> include opiate withdrawal despite the fact it is a known suicide risk factor. *Id*.

33.     Although the checklist permits an officer to indicate, among other things, any visible signs of alcohol/drug withdrawal, the PPD Detainee Medical Checklist does not contain a place for an officer to indicate that a detainee is suffering from withdrawal.

34.     While detained at the police district, Decedent began suffering from severe withdrawal symptoms, including, but not limited to, acute onset abdominal pain, nausea, and vomiting with red streaks.

35.     On January 6, 2021, at approximately 1:30 a.m., Philadelphia police officers called 911 and the Philadelphia Fire Department EMS arrived an evaluated Decedent who reported that he was experiencing withdrawal symptoms.

36.     Defendants were aware that Decedent reported to EMS that he is a heroin user and was suffering from opioid withdrawal.

37.     Philadelphia EMS transported Decedent to Albert Einstein Medical Center (AEMC) where he presented with the aforementioned symptoms.

38.     Upon examination, Decedent was initially diagnosed with extremely painful kidney stones and received 4 mg of morphine to ease his symptoms.

39.     After tests were completed, hospital staff ruled out all causes for Decedent's symptoms other than opioid withdrawal and opioid use disorder.

40.     Hospital staff administered another 4 mg of morphine to Decedent before they released him.

41.     Decedent was released into police custody with discharge instructions that indicated he was an opioid user who has opioid use disorder and was suffering with opiate withdrawal.

42.     The transporting officers were informed that Decedent had been given morphine and was suffering from opioid withdrawal.

43.     Upon information and belief, Decedent's Detainee Medical Checklist was not updated to reflect the fact that he was given morphine and suffering from withdrawal.

44.     Despite the fact that decedent was under the influence of, among other things, the morphine he was given by hospital staff, and suffering from withdrawal, Decedent was not placed into a special observation cell to prevent self-harm and suicide.

45.     Less than three (3) hours from his return to the police district, at approximately 8:35 am in the morning, decedent was found hanging from his sweatshirt.

46.     Upon information and belief, Decedent was refused and/or denied medical assistance by the Philadelphia police officers for a substantial period of time from when he returned from the hospital until he was found hanging in his cell.

8

47.     Upon information and belief, Defendants did not render adequate, proper, appropriate, or timely medical treatment or care to Decedent even after he was found in his holding cell hanging from his sweatshirt.

48.     The Philadelphia Police Department Officers did not render emergency aid and/or rendered inadequate care and unreasonably delayed in calling 911 for outside emergency medical services from the Philadelphia Fire Department.

49.     Emergency services were eventually called, and Decedent was taken by EMS back to AEMC.

50.     Decedent was pronounced dead at AEMC due to cardiac arrest caused by hanging at approximately 9:00am.

51.     Decedent's family was never notified by the police, but only found out by conducting their own search.

52.     At all times relevant, Decedent was suicidal.

53.     At all times relevant, the Defendants knew or should have known from that Descendant and other pre-trial detainees suffering from opiate withdrawal are at higher risk of suicide while in detention or to have suicidal tendencies.

54.     The Defendants failed to properly monitor Decedent allowing him to be unsupervised which allowed him the time to fashion a noose from his shirt and hang himself.

55.     Defendants were on notice that Decedent was suffering from psychiatric conditions, including but not limited to opioid use disorder, and that hospital staff administered morphine while he was in police custody because the symptoms Decedent suffered from opioid use disorder and was experiencing opioid withdrawal before they placed Decedent back into the holding cell.

9

56.    Upon information and belief, Plaintiff alleges that, prior to his death, Defendants knew and/or should have known of Decedent's opioid use disorder and/or that he was suffering from opioid withdrawal and/or that individuals suffering from said conditions are at increased risk for suicide and/or suicidal ideation and intentionally and deliberately or with reckless indifference, disregarded Decedent's depression and suicide risk, all in violation of his rights under the United States Constitution.

57.    Defendants violated Decedent's rights by any and all of the following: (a) failing to place Decedent on an appropriate and effective suicide watch; (b) failing to have Decedent evaluated by medical staff; (c) failing to transfer Decedent to an appropriate mental health facility; (d) failing to remove from Decedent's jail cell all items by which Decedent could harm himself, including his sweatshirt; (e) failing to provide Decedent with the proper necessary psychiatric care and reasonable safe guards and other precautions to assure his safety; (f) failing to properly monitor and watch Decedent to protect him from harming himself; (g) failing to create, establish and/or implement an adequate suicide prevention system and/or failing to follow their own internal guidelines and directives; (h) failing to train Police Officers and other employees of Defendant's who interacted with detainees to recognize potentially suicidal detainees.

58.    As Plaintiff's Decedent was in custody as a pre-trial detainee, there existed a special relationship between Defendants and Plaintiffs Decedent.

59.    Defendants were trusted to provide Plaintiff's Decedent with appropriate and timely medical care and treatment and further were responsible for his protection, safety, well-being and life while he was in custody at the

10

Philadelphia Police Department.

60.    During the period of time the Decedent was detained at the police district holding cell he was under the influence of drugs, withdrawing, was in need of mental health care and was at increased risk of suicide, all of which was known by Defendants or should have been known to them upon use of reasonable care.

61.    At all times relevant hereto, Decedent was or should have been provided proper safeguards for his safety and/or provided proper care, medical or otherwise, while in the custody of Defendants against his will.

62.    Prior to his death, Defendants had actual knowledge of Decedent's compromised mental health, knew or had reason to know of his risk for suicide, but deliberately or recklessly failed to act in disregard of Decedent's compromised mental health state and risk of suicide.

63.    Despite said knowledge, Defendant's failed to take necessary and available precautions to protect Decedent, as is required by the 14th Amendments to United States Constitution.

64.    Despite the fact that Defendants knew or should have known of Decedent's psychiatric condition and increased suicide risk, Decedent was not provided proper safeguards, monitoring, or attention by the Defendants.

65.    Upon information and belief, Defendants knew or should have known that Decedent presented a high risk of suicide while in detention in the holding cell.

66.    Upon information and belief, the cell in which the Decedent was held during his detention was or should have been under frequent observation by

11

plain sight and sound of Defendant's police officers.

67.    As a direct result of Defendant's conduct described above, Decedent suffered great personal injury and felt great pain and suffering between the time his suicide attempt began through the time of his death.

68.    As a further result of the Defendant's conduct, Decedent's life ended, which resulted in loss of earnings and income to which his Estate would have been entitled.

69.    Upon information and belief, Decedent's suicide was not the first at a Philadelphia Police Department District.

70.    Pre-trial detainees, including Decedent, are at risk for great physical harm, injury, and death due to the failure of the Defendants to create or implement an adequate suicide prevention program and by their failure to properly train the employees in how to recognize potentially suicidal detainees, including but not limited to individuals who suffer from opioid use disorder and/or opioid withdrawal and set in motion proper safeguards and protections from them.

71.    Indeed, in this case Defendants had actual knowledge of Decedent's mental and substance abuse/withdrawal issues that are directly correlated to an increased risk of suicide.

72.    Defendants are under a duty and obligation to provide a safe and suitable detention facility.

73.    Pre-trial detainees are entitled to the same constitutional protection as persons convicted of crimes. Diaz vs. Houck 159 Pa. Cmwlth.274,632 A.2d 1081 (1993).

74.    Defendants knew prior to January 6, 2021, that there had been suicides and suicide attempts by pre-trial detainees within the police station holding cells.

75.    Each of these suicides and suicide attempts increased the obligation on the part of the Defendants to implement policies and training of personnel to ensure the safety of pre-trial detainees.

## IV.    UNCONSTITUTIONAL ACTS AND OMISSIONS OF ALL DEFENDANTS

76.    Despite Defendants' knowledge of past suicides and suicide attempts, the Defendants have failed and continue to fail to take necessary steps to correct or remedy the deficiencies in the operation of the Philadelphia Police District holding cells that facilitates suicides and suicide attempts.

77.    As members of the Philadelphia Police Department at the time of the incident, Defendants were responsible for authorization, implementation, and oversight of the policies, procedures, and practices, and more specifically those policies, procedures, and practices regarding the placement of detainees withdrawing from drugs and in need of mental health care, as well as, suicide screening for prevention of suicide for those detainees at high risk for potentially causing harm to themselves.

78.    Decedent's suicide was predictable and the product of the deliberate indifference of the Defendants.

79.    This deliberate indifference on the part of Defendants resulted from official positions and policies and/or from well settled practices on the part of the Defendants so as to establish them as official policy.

80.    By approving, condoning, acquiescing in the policy, practice and/or custom of housing persons with a known vulnerability to suicide, as well as suicidal ideology, such as the

13

decedent, and with a known history of severe mental health issues, addiction issues, and withdrawal symptoms, such as the decedent, Defendants were deliberately indifferent to the decedent's vulnerability to suicide, and the substantial risk that he would commit suicide while being housed at a police district, in violation of the decedent's rights under the Fourteenth Amendment.

81.     By approving, condoning, acquiescing in the policy, practice and/or custom of housing persons with severe mental health issues and/or opioid use disorder, addiction and withdrawal symptoms, such as Decedent, without providing the decedent or other similarly situated detainees with proper care or treatment for their mental health/addiction and withdrawal issues, Defendants were deliberately indifferent to the decedent's conditions of confinement, which deprived him of the minimal civilized measure of life's necessities, and to his right to adequate medical care for his serious medical needs, in violation of the decedent's rights under the Fourteenth Amendment.

82.     Defendants acted with deliberate indifference when they failed to place decedent in a special observation cell on suicide watch, remove his sweatshirt that could be used as a ligature, and/or place him in a cell with another detainee, and observe decedent closely, every ten (10) minutes or less, in order to provide him with the treatment and assistance that he needed in accordance with Philadelphia Police Department's policy and Appendix "E" of Philadelphia Police Department Directive 7.8.

83.     Defendants had a constitutional duty to protect the decedent from the risk of suicide and ensure that he received adequate medical care for his deteriorating mental and physical health, and despite the aforementioned Defendants knowledge that the decedent posed a suicide risk with severe mental health and addiction/withdrawal issues which conduct

constituted deliberate indifference to the decedent's right to be safe from suicide and right to adequate medical care in violation of the Fourteenth Amendment.

84.    Defendants intentionally and/or with deliberate indifference ignored the decedent's substantial risk of suicide while he was being housed in police district, which was the direct and/or proximate cause of the decedent's suicide.

85.    Decedent's mental health and addiction/withdrawal issues constituted a serious medical condition, and Defendants were deliberately indifferent to the decedent's serious medical condition when they failed to provide him with needed treatment and assistance.

86.    As the direct and proximate result of all Defendants deliberate indifference to the decedent's vulnerability to suicide and serious medical needs, the decedent hung himself and died.

87.    As the direct and proximate result of all Defendants deliberate indifference to the decedent's vulnerability to suicide and serious medical needs, the decedent suffered pain and suffering, enormous emotional pain, conscious suffering, and a complete loss of earnings and earning capacity.

## V.    CLAIMS

<div align="center">

**COUNT I – 42 U.S.C. § 1983**
**14TH AMENDMENT—DELIBERATE INDIFFERENCE TO KNOWN RISK OF SUICIDE**
**MICHAEL BOCKIUS v. ALL INDIVIDAL DEFENDANTS**

</div>

88.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

89.    As alleged above, all Defendants knew or should have known that decedent was particularly vulnerable to suicide and that there was a strong likelihood that he would attempt suicide, and notwithstanding this knowledge of a significant risk to decedent's health and safety, they were deliberately indifferent by failing to take any action or

<div align="center">15</div>

precaution to prevent him from hanging himself, such as placing him on suicide watch or removing articles of clothing for his protection or placing him in the designated special observation cell observing decedent at intervals not to exceed ten (10) minutes that would not exacerbate his severe mental health and addiction/withdrawal issues and vulnerability to suicide.

90.    All Defendants intentionally and/or with deliberate indifference ignored the decedent's risk or vulnerability to suicide by placing him in a cell without needed observation, and with the knowledge that there was a strong likelihood that he would attempt to kill himself by hanging, the predominant method used by suicidal detainees.

91.    As the direct and proximate result of the above deliberate indifference of all Defendants Decedent hung himself within the first three (3) hours of his detention upon his return from the AEMC and died.

92.    The above-described actions of all Defendants were so malicious, intentional, and reckless and displayed such a reckless indifference to the decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff, Diana Meighan, demands compensatory and punitive damages against all individually named Defendants in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT II - 42 U.S.C. § 1983**
**14th AMENDMENT – INADEQUATE MEDICAL CARE**
**MICHAEL BOCKIUS v. ALL INDIVIDUAL DEFENDANTS**

93.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

94.    The decedent entered the police district with serious mental health issues and clearly intoxicated and Defendants knew or should have known that Decedent was withdrawing from the highly addictive drug, fentanyl, and was likely to exhibit suicidal thoughts and tendencies. Without the proper treatment and assistance, Defendants know or at a minimum should have known that Decedent was at a high risk of suicide, based upon the Philadelphia Police Department own directives and training.

95.    Despite Defendants knowledge of decedent's serious medical condition and his serious medical needs, they intentionally or with deliberate indifference ignored the Decedent's medical needs and failed to provide him the needed suicide prevention while he was incarcerated

96.    As a direct and proximate result of the malicious, intentional, deliberate, and/or reckless actions of the Defendants in denying Decedent the necessary observation for signs of suicidal behavior, his mental condition deteriorated, resulting in his suicide.

97.    The above-described actions of the Defendants were so malicious, intentional and reckless and displayed such a reckless indifference to the decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983, Plaintiff, Diana Meighan, demands compensatory and punitive damages against the individually named Defendants in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT III - 42 U.S.C. § 1983**
**14th AMENDMENT – BYSTANDER/SUPERVISOR LIABILITY**
**MICHAEL BOCKIUS v. ALL INDIVIDUAL DEFENDANTS**

98.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

99.    The plaintiff believes and therefore avers that Defendants ignored and stood idly by while Decedent was exhibiting symptoms of opioid use disorder and/or opioid withdrawal and/or suicidal ideation, which deprived Decedent of his constitutional rights and privileges under the Constitution of the United States.

100.    The plaintiff believes and therefore avers that Defendants failed to prevent Decedent from committing suicide, and therefore deprived decedent of his rights under the Fourth and Fourteenth Amendments.

101.    As detailed above, defendants failed to fulfill their obligation to intervene when they had an independent and affirmative duty to prevent Decedent from committing suicide.

102.    As detailed above, by failing to intervene, effectively assisted decedent in committing suicide and therefore deprived the plaintiff of his constitutional rights and privileges under the Constitution of the United States, more specifically the Fourth and Fourteenth Amendments.

103.    The above-described actions of the defendants in their individual capacities were so malicious, intentional, and reckless and displayed such a reckless indifference to the plaintiff's rights and well-being that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, plaintiff demands compensatory and punitive damages the individually named Defendants in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

18

**COUNT IV - 42 U.S.C. § 1983**
**MONELL CLAIM**
**MICHAEL BOCKIUS v. ALL INDIVIDUAL DEFENDANTS**

104.    All of the preceding paragraphs are incorporated by reference, as if more fully

forth herein.

105.    The Plaintiff, Diana Meighan, believes and therefore avers that the Defendant,

City of Philadelphia, has adopted and maintained for many years a recognized and accepted

policy, custom and/or practice of condoning and/or acquiescing in the failure to provide

appropriate medical care and suicide prevention; for detainees such as Decedent who were

suffering from mental health and/or opioid use disorder and/or opioid withdrawal while

being detained at holding cells in the police districts, and subjecting them to the same type of

treatment to which Decedent was subjected.  Said policy, custom and practices violates the

Fourteenth Amendment of the Constitution of the United States, the laws of the United States

and of the Commonwealth of Pennsylvania.

106.    The Plaintiff believes and therefore avers that the Defendant, City of

Philadelphia, has adopted and maintained for many years, a recognized and accepted policy,

custom, and practice of systematically failing to properly train, investigate, supervise and

discipline police officers, including the individual defendants, regarding the constitutional

obligation to protect detainees with mental health and addiction issues being detained at

police districts in accordance with the requirements of the Fourteenth Amendments of the

Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania,

laws of the United States and of the Commonwealth of Pennsylvania.

107.    The Defendant, City of Philadelphia, has been deliberately indifferent to the

rights of citizens of the City of Philadelphia to be free from deliberate indifference to known risk

of suicides and inadequate medical care for those detainees suffering from mental health and

addiction issues, which deliberate indifference violates the plaintiff's rights under the

Fourteenth Amendments of the Constitution the laws of the United States and of the

Commonwealth of Pennsylvania.

108.    The Plaintiff believes and therefore avers, that at all material times, the

Defendant, City of Philadelphia, knew or should have known of the above-described policy,

custom and/or practice of the Philadelphia Police Department, and that they deliberately,

knowingly and intentionally failed to take measures to stop or limit the policy, custom and

practice.

109.    By failing to take action to stop or limit the policy and/or custom and/or practice

by remaining deliberately indifferent to the systematic abuses which occurred in accordance

with and as a direct and proximate result of the policy, Defendant, City of Philadelphia,

condoned, acquiesced in, participated in, and perpetrated the policy in violation of the

plaintiffs' rights under the Fourth and Fourteenth Amendments of the Constitution of the United

States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States

and of the Commonwealth of Pennsylvania.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Law, the Plaintiff,

Diana Meighan as the administrator of the Estate of Michael Bockius, demands

compensatory against defendants. the City of Philadelphia and Commissioner Outlaw, jointly

and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus

interest, costs, attorney's fees and all other appropriate relief.

### COUNT V – WRONGFUL DEATH
### DIANA MEIGHAN v. ALL DEFENDANTS

110.    All of the preceding paragraphs are incorporated by reference as if more fully

set-forth herein.

111.    Plaintiff, Diana Meighan brings this action pursuant to the Wrongful Death Act 42 Pa. C.S.A. Section 8301 and claims all damages recoverable under the Pennsylvania Wrongful Death Act.

112.    As a direct and proximate result of the aforementioned actions of the defendants, the decedent, Michael Bockius, his family and his Estate have suffered severe emotional and pecuniary losses and damages including the following:

(a)    an amount which will cover all funeral, burial and estate administration expenses incurred;

(b)    an amount which will fairly and adequately compensate the family members of the decedent for their loss of such contributions as they would have received between the time of the death of the decedent and today. This includes all monies that the decedent would have spent for or given to his family;

(c)    an amount which will fairly and adequately compensate his family for the loss of such contributions as the decedent would have contributed to the support of his family between today and the end of his normal life expectancy; and

(d)    an amount which will fairly and adequately compensate his family for the pecuniary and emotional value of the services, society and comfort that he would have given to his family had he lived including such elements as provision of physical comfort and services and provision of society and comfort.

113.    As a direct and proximate result of the Defendants' wrongdoing as set forth above, which is incorporated herein, Michael Bockius' Wrongful Death beneficiaries suffered, are suffering, and will, for an indefinite period of time in the future, suffer damages, injuries and losses including but not limited to, a loss of financial support, and the beneficiaries have been wrongfully deprived of the contributions they would have received

21

from him, including monies which he would have provided for items such as clothing, food, shelter, medical care, education and entertainment, recreation and gifts.

114.    As a direct and proximate result of Defendants' wrongdoing as set forth above, which is incorporated herein, Michael Bockius' Wrongful Death beneficiaries have been caused to incur and pay various expenses for medical treatment, hospital care, custodial care, and funeral and other expenses related to his death.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and Pennsylvania Law, the Plaintiff, Diana Meighan as the administrator of the Estate of Michael Bockius, demands compensatory and punitive damages against defendants, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

### COUNT VI – SURVIVAL ACTION
### <u>DIANA MEIGHAN v. ALL DEFENDANTS</u>

115.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

116.    Plaintiff, Diana Meighan brings this action on behalf of the Estate of Michael Bockius, deceased, by virtue of the Survival Act, 42 Pa.C.S.A. § 8302, and claims all benefits of the Survival Act on behalf of Michael Bockius' Estate and other persons entitled to recover under law.

117.    As a direct and proximate result of the aforementioned actions of the defendants, the decedent, Michael Bockius, his family and his estate are entitled to damages which shall include the following:

          (a)     an award of the total net amount that the decedent would have earned between the date of his death and today;

(b)    an award of the net amount that the decedent would have earned

between today and the natural end of the decedent's life expectancy;

and

(c)    an award of such an amount as will fairly and adequately compensate

the estate for the mental and physical pain and suffering that the

decedent endured from the moment of the improper treatment by the

defendants to the moment of his death as a foreseeable result of the

improper treatment.

118.    As a direct and proximate result of Defendants' wrongdoing as set forth

above, which is incorporated herein, Plaintiff, Diana Meighan claims on behalf of the Estate

of Michael Bockius, all damages suffered by the Estate by reason of the death of Michael

Bockius, including without limit the generality of the following: the severe injuries to Michael

Bockius, which resulted in his death; the anxiety, horror, fear of impending death, mental

disturbance, pain, suffering and other intangible losses which Michael Bockius suffered prior

to his death; the loss of past, present and future earning capacity suffered by Michael

Bockius, from the date of his death until the time in the future he would have lived had he

not died as a result of the injuries he sustained; expenses for medical care; the loss and

total limitation and deprivation of his normal activities, enjoyment of life, pursuits and life's

pleasures from the date of his death until such time in the future as he would have lived had

he not died as a result of the injuries sustained.

WHEREFORE, pursuant to 42 U.S.C. § 1983 and Pennsylvania Law, the

Plaintiff, Diana Meighan as the administrator of the Estate of Michael Bockius, demands

compensatory and punitive damages against defendants, jointly and/or severally, in an

amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs,

attorney's fees and all other appropriate relief.

Respectfully submitted,

L. KENNETH CHOTINER, LL.M.
Pennsylvania ID No. 77451
ABRAMSON & DENENBERG, P.C.
1315 Walnut Street | Suite 500
Philadelphia, PA 19107
(215) 398-7066
KChotiner@adlawfirm.com